## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE<br>1875 Eye Street, N.W., Suite 800<br>Washington, D.C. 20006,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Avenue, N.W.<br>Washington, D.C. 20230,<br><br>Defendant. | Civil Action No. 19-2698 |

## <u>COMPLAINT</u>

1.      Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records responsive to two FOIA requests submitted to Defendant U.S. Department of Commerce ("Commerce").  Those requests seek access to the Secretary of Commerce's final report to the President prepared under 19 U.S.C. § 1862—also known as Section 232 of the Trade Expansion Act of 1962 ("Section 232")—regarding an investigation into the national security impacts of the importation of uranium ("Section 232 Uranium Report").  CoA Institute's requests also seek access to a memorandum prepared by the Department of Defense ("DOD") regarding the same investigation.

2.      This action seeks additional judicial review of Commerce's policy and practice of refusing promptly to produce Section 232 reports upon receipt of a valid

FOIA request and subject only to redaction for "classified . . . or proprietary information," as mandated by Congress.  *See* 19 U.S.C. § 1862(b)(3)(B).  Commerce instead has repeatedly withheld Section 232 reports in full, either by neglecting its obligation of prompt production or on a theory of "temporary" privilege.  In either instance, and as applied in the instant case, Commerce has unlawfully conditioned the disclosure of Section 232 reports upon the direction of the President and in order to satisfy the Administration's goal of opacity on trade matters.

## JURISDICTION AND VENUE

3.    Jurisdiction is asserted under 28 U.S.C. § 1331 (actions arising under the laws of the United States), 5 U.S.C. § 552(a)(4)(B) (FOIA), and 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act).

4.    Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.    CoA Institute is a 501(c)(3) nonpartisan government oversight organization that uses investigative, legal, and communications tools to educate the public about how government accountability, transparency, and the rule of law protect individual liberty and economic opportunity.  CoA Institute regularly uses the FOIA to request access to public records of federal agencies, entities, and offices, and it publicly disseminates its findings, analysis, and commentary.

6.    Commerce is an agency within the meaning of 5 U.S.C. § 552(f)(1). Commerce, by and through its various offices and components, has possession, custody, and control of records to which CoA Institute seeks access and that are the

subject of this Complaint.  Commerce has implemented and applied the policy and

practice alleged by refusing to disclose Section 232 reports, as required by law.

<u>FACTS</u>

## I.      Section 232 and the Preparation of Secretarial Reports

7.      The United States Constitution grants Congress the sole authority to

set tariffs and "regulate Commerce with foreign Nations[.]"  U.S. Const. art. I,

sec. 8.  Section 232 of the Trade Expansion Act of 1962 delegates some of that

authority to Commerce and the President, by allowing him to adjust tariffs on

imported articles to safeguard national security.  19 U.S.C. § 1862.

8.      Yet Congress's delegation of tariff authority is not without additional

obligations.   Among other things, the President cannot determine an article's

impact on national security without a report from the Secretary of Commerce.

9.      Specifically, Section 232 provides that "[u]pon request of the head of

any department or agency, upon application of an interested party, or upon his own

motion, the Secretary . . . shall" investigate whether importation of an article affects

national security.  *Id.* § 1862(b)(1)(A).  Then, within 270 days of starting such an

investigation, the Secretary must create and submit a report to the President with

findings and recommendations about whether to impose tariffs.  *Id.* § 1862(b)(3)(A).

10.      Section 232 further provides that, at the conclusion of an investigation,

"[a]ny portion of [a] report . . . which does not contain classified . . .  or proprietary

information . . . shall be published in the *Federal Register*."  *Id.* § 1862(b)(3)(B).

Although the statute does not provide a specific timetable for publication, it does

not provide for presidential input or control over publication and does not grant Commerce authority to withhold in full a report in response to a FOIA request.

## II.    The Section 232 Process in the Current Administration

11.    The current Administration has invoked the Section 232 process on five separate occasions.  *See* Dep't of Commerce, Bureau of Indus. & Sec., Section 232 Investigations: The Effect of Imports on the National Security, Completed Reports, *available at* http://bit.ly/2zotcJe.  Commerce has investigated and created reports on the national-security impacts of the importation of steel, aluminum, uranium, and automobiles.   Upon information and belief, Commerce is still investigating the import effects of titanium-sponge and has not yet produced a report for transmission to the President and publication in the *Federal Register*.

12.    When Commerce completed its reports on steel and aluminum in 2018, it transmitted those reports to the President and—within one month—published executive summaries in the *Federal Register* and full reports on its website, subject to the redaction of classified and proprietary information.  *See* Dep't of Commerce, The Effect of Imports of Aluminum on the National Security (Jan. 2018), *available at* http://bit.ly/2N35R9q; Dep't of Commerce, The Effect of Imports of Steel on the National Security (Jan. 2018), *available at* http://bit.ly/2L7gBRJ.

13.    More recently, however, Commerce has changed course and started to withhold Section 232 reports in full by refusing to publish them in the *Federal Register* or to disclose them under the FOIA.

14.     This shift in policy and practice is illustrated by Commerce's treatment of its report on the national security effects of automobile importation ("Section 232 Automobile Report").   *See* Cause of Action Inst., *Auto-Tariff Investigation Sets Dangerous Anti-Transparency Precedent*, Apr. 26, 2019, https://coainst.org/2ZJoRLT.

15.     In February 2019, after Commerce failed to publish the Section 232 Automobile Report, CoA Institute filed two FOIA requests seeking access to it.

16.     Approximately four months later, and in the midst of litigation over its failure to issue a timely determination in response to CoA Institute's requests for the automobile report, Commerce sent a letter to CoA Institute stating that the agency is "reviewing, in conjunction with the Executive Office of the President, whether the Secretary's report constitutes a presidential record within the meaning of the Presidential Records Act . . . in which case it would not be subject to disclosure under FOIA."  Ex. 1.

17.     Commerce further stated that, even if the automobile report were subject to the FOIA, the agency would nonetheless withhold it "pursuant to the presidential communications privilege and/or the deliberative process privilege, until all actions deemed necessary to adjust the imports of automobiles and automobile parts so that such imports will not threaten to impair the national security have been completed."  *Id.*

18.     CoA Institute's lawsuit against Commerce over access to the Section 232 Automobile Report, and the agency's use of "temporary" privileges, is pending.

The parties' cross-motions for summary judgment are under advisement. *See Cause of Action Inst. v. Dep't of Commerce*, No. 19-0778 (D.D.C. filed Mar. 20, 2019).

19.    Additionally, in April 2019, Commerce completed a separate investigation into the "effect of imports of uranium . . . on the national security," and it transmitted its final report to the President. *See, e.g.*, The White House, Presidential Memoranda: Memorandum on the Effect of Uranium Imports on the National Security and Establishment of the United States Nuclear Fuel Working Group (July 12, 2019) [hereinafter WH Memo], *available at* http://bit.ly/326VOmz.

20.    Commerce did not publish the Section 232 Uranium Report in the *Federal Register* and has failed to provide for access to the report on its website.

21.    In the face of Commerce's failure to publish or proactively disclose the Section 232 Uranium Report, CoA Institute filed the two FOIA requests at issue in this Complaint.

**III.    FOIA Request DOC-IOS-2019-001211**

22.    By letter, dated April 15, 2019, CoA Institute sent a FOIA request to Commerce's Office of Privacy and Open Government seeking access to a (1) "copy of the Commerce Secretary's final report to the President regarding the Section 232 Investigation on the Effect of Imports of Uranium on the National Security," and (2) the "DOD response letter to the Section 232 Investigation on the Effect of Imports of Uranium on the National Security." Ex. 2.

23.    CoA Institute sought a public interest fee waiver and requested to be classified as a representative of the news media for fee purposes. *Id.* at 1–3.

24.     By email, dated May 7, 2019, Commerce indicated via FOIAonline that CoA Institute's request would be identified using tracking number DOC-IOS-2019-001211. Ex. 3. The agency did not issue a formal acknowledgement, nor did it issue any determinations on CoA Institute's fee-related requests.

25.     To date, CoA Institute has received no further communication from Commerce on its request.

**IV.     FOIA Request BIS 19-088**

26.     By letter, dated April 15, 2019 CoA Institute sent a FOIA request to Commerce's Bureau of Industry and Security ("BIS") also seeking access to a (1) "copy of the Commerce Secretary's final report to the President regarding the Section 232 Investigation on the Effect of Imports of Uranium on the National Security," and (2) the "DOD response letter to the Section 232 Investigation on the Effect of Imports of Uranium on the National Security." Ex. 4.

27.     CoA Institute sought a public interest fee waiver and requested to be classified as a representative of the news media for fee purposes. *Id.* at 1–3.

28.     By letter, dated May 16, 2019, BIS provided its final determination and granted CoA Institute's request, explaining that "[it] intend[s] to provide all non-exempt documents responsive to [CoA Institute's] request." Ex. 5. The agency also advised that "the report will be made publicly available via publication in the Federal Register, pursuant to 15 C.F.R. § 710(c), after the President's review is complete." *Id.* Commerce did not address CoA Institute's fee-related requests.

29.     Between May 2019 and August 2019, counsel for CoA Institute continued to communicate with Commerce about the availability of the Section 232 Uranium Report.  While those communications were ongoing, the White House issued a memorandum summarizing that it had completed its review of the effects of uranium imports on national security.  *See* WH Memo, *supra*, ¶ 20.

30.     By email, dated July 15, 2019, Commerce indicated that "an executive summary [of the uranium report] will be printed in the [*Federal Register*] within the next 30 days and the full report will be on the BIS website."  Ex. 6.

31.     Commerce did not reveal whether it intends to produce the "DOD response letter to the Section 232 Investigation on the Effect of Imports of Uranium on the National Security," which is Item 2 of the FOIA request.

32.     Despite CoA Institute's attempts to inquire further with Commerce after thirty days had elapsed, the agency failed to provide any further clarification or an update on the availability of the Section 232 Uranium Report.  *Id*.

33.     To date, neither BIS nor any other agency component has produced responsive records, notwithstanding Commerce's previously stated intent to do so, and the agency still has not published the uranium report in the *Federal Register* or disclosed it online.

34.     Commerce has no lawful basis, beyond withholding segregable classified or proprietary information, for failing to produce the Section 232 Uranium Report and the DOD response letter in response to CoA Institute's FOIA request.

## V.   Commerce's Reliance on "Temporary" Privileges and Presidential Directives to Withhold Section 232 Reports

35.    Commerce's obstinance in disclosing the Section 232 automobile and uranium reports reflects an ahistorical and novel policy and practice of attempting to condition the publication and dissemination of such reports on *presidential directive*, despite Congress's clear mandate for transparency and public access.

36.    Whether by invoking the "temporary" application of the presidential-communications and deliberative-process privileges, claiming that records are outside agency control, or simply refusing to produce a report that it has already indicated would be made public available, Commerce's actions offend the principles of open government and the letter of the law.

37.    As a result of Commerce's policy and practice of withholding Section 232 reports pending presidential approval for disclosure, CoA Institute has suffered a deprivation of access, both with respect to its requests for the Section 232 Uranium Report and accompanying DOD memoranda, as well as the Section 232 Automobile Report, which is already the subject on ongoing litigation.

38.    Based on Commerce's past treatment of CoA Institute's requests, and given CoA Institute's frequent use of the FOIA, it can be reasonably expected that any future requests for Section 232 reports—such as the now-pending titanium-sponge report, *see supra* ¶ 11—will similarly result in an unlawful withholding.

39.    CoA Institute is entitled to relief in the form of a declaratory order stating that Commerce's policy and practice of withholding Section 232 reports

violates the FOIA. CoA Institute also is entitled to an injunction directing Commerce to disavow and refrain from the same unlawful policy and practice.

## COUNT 1

### Violation of the FOIA: Failure to Comply with Statutory Deadlines

40. CoA Institute repeats all of the foregoing paragraphs.

41. The FOIA requires agencies to respond to requests within twenty (20) business days or, in "unusual circumstances," thirty (30) business days. 5 U.S.C. §§ 552(a)(6)(A)–(B).

42. More than twenty (20) business days have passed since Commerce received request DOC-IOS-2019-001211.

43. Commerce has not invoked FOIA's ten-day statutory response extension due to unusual circumstances for request DOC-IOS-2019-001211.

44. The FOIA further requires that, upon determining it will grant a FOIA request and provide access to records, an agency "shall make the records *promptly available*[.]" *Id*. § 552(a)(3)(A) (emphasis added).

45. Despite issuing a final determination on request BIS 19-088 approximately four months ago and stating that it intended to produce non-exempt responsive records, Commerce has not produced *any* portion of the Section 232 Uranium Report or accompanying DOD memorandum.

46. Commerce has failed to comply with the FOIA's statutory deadlines to issue a final determination and to make records promptly available. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188

(D.C. Cir. 2013) ("promptly available" means "within days or a few weeks of a 'determination,' not months or years").

47.    CoA Institute has exhausted its administrative remedies for the requests at issue in this Complaint under 5 U.S.C. § 552(a)(6)(C).

## COUNT 2

### Violation of the FOIA: Policy and Practice of Unlawfully Withholding and Delaying the Production of Section 232 Reports

48.    CoA Institute repeats all of the foregoing paragraphs.

49.    Commerce maintains a policy and practice of withholding in full and delaying the production of Section 232 reports until such time as directed by the White House to release the records.  That policy and practice violates the FOIA.

50.    Commerce's policy and practice has prevented CoA Institute from accessing agency records to which it is entitled, and it will likely impair CoA Institute's lawful access to such records in the future.  *See Payne Enters., Inc. v. United States*, 837, F.2d 486 (D.C. Cir. 1988).

51.    Congress requires that Commerce publish Section 232 reports in the *Federal Register*, and it only permits the redaction of classified or proprietary information.  19 U.S.C. § 1862(b)(3)(B).

52.    By contrast, Commerce maintains that it may withhold Section 232 reports in full, subject to "temporary privileges."  Commerce relatedly maintains that it may delay disclosure until such time as the President has finished his review of a Section 232 report and determined that disclosure may occur.

53.     Commerce applied its policy and practice of withholding and delaying Section 232 reports to CoA Institute's FOIA requests for the uranium and automobile reports.

54.     CoA Institute will likely file future requests for future Section 232 reports, including the titanium-sponge report, which has yet to be finalized, and those requests are likely be subject to the same improper policy and practice. Commerce's policy and practice will therefore impair CoA Institute's access to agency records.

## RELIEF REQUESTED

WHEREFORE, Plaintiff CoA Institute respectfully requests and prays that this Court:

a.     Order Defendant to issue a final determination on request DOC-IOS-2019-001211 within twenty (20) days of the date of the Order;

b.     Order Defendant to produce all records responsive to the requests at issue in the Complaint within thirty (30) days of the Order, or within thirty (30) days of a final determination, as applicable;

c.     Declare that Defendant's policy or practice of withholding in full and delaying the production of Section 232 reports violates the FOIA;

d.     Enjoin Defendant from withholding Section 232 reports in response to a FOIA request, except for redactions for classified or proprietary information, as set forth by Congress;

e.     Award CoA Institute its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

      f.      Grant such other relief as the Court may deem just and proper.


Date: September 9, 2019          Respectfully submitted,

                          */s/ Ryan P. Mulvey*
                          Ryan P. Mulvey
                          (D.C. Bar No. 1024362)
                          R. James Valvo, III
                          (D.C. Bar No. 1017390)

                          CAUSE OF ACTION INSTITUTE
                          1875 Eye Street, N.W., Suite 800
                          Washington, D.C. 20006
                          Telephone: (202) 499-4232
                          Facsimile: (202) 330-5842
                          ryan.mulvey@causeofaction.org
                          james.valvo@causeofaction.org

                          *Counsel for Plaintiff CoA Institute*