

## CAUSE *of* ACTION
### ═══ I N S T I T U T E ═══

Pursuing Freedom & Opportunity through Justice & Accountability℠

April 15, 2019

**<u>VIA CERTIFIED MAIL</u>**

Departmental Freedom of Information Officer
Office of Privacy and Open Government
14th and Constitution Avenue NW
Mail Stop 52010FB
Washington, DC 20230

Re:     **<u>Freedom of Information Act Request</u>**

Dear FOIA Officer:

I write on behalf of Cause of Action Institute ("CoA Institute"), a 501(c)(3) nonpartisan government oversight organization that uses investigative, legal, and communications tools to educate the public about how government accountability, transparency, and the rule of law protect individual liberty and economic opportunity.[1]

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, CoA Institute hereby requests:

1. A copy of the Commerce Secretary's final report to the President regarding the Section 232 Investigation on the Effect of Imports of Uranium on the National Security.[2]

2. The DOD response letter to the Section 232 Investigation on the Effect of Imports of Uranium on the National Security.[3]

### **<u>Request for a Public Interest Fee Waiver</u>**

CoA Institute requests a waiver of any and all applicable fees.  FOIA and applicable regulations provide that the agency shall furnish requested records without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."[4]  In this case, the requested records

---

[1] *See* CAUSE OF ACTION INSTITUTE, *About*, www.causeofaction.org/about/.

[2] Regulations.gov. *Notice of Request for Public Comments on Section 232 National Security Investigation of Imports of Uranium*, *available at*: https://www.regulations.gov/docket?D=BIS-2018-0011 (last visited Apr. 15, 2019); Bureau of Industry and Security. *Section 232 Investigations: The Effect of Imports on the National Security*, *available at*: https://www.bis.doc.gov/index.php/other-areas/office-of-technology-evaluation-ote/section-232-investigations (last visited Apr. 15, 2019).

[3] See Exhibit 1 attached for the DOD Memorandum for Secretary of Commerce with regards to steel and aluminum tariffs. We seek the same memorandum for the uranium investigation.

[4] 5 U.S.C. § 552(a)(4)(A)(iii); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115-19 (D.C. Cir. 2015) (discussing proper application of public-interest fee waiver test).

Department of Commerce
April 15, 2019
Page 2

unquestionably shed light on the "operations or activities of the government," as they reveal the reasoning behind increasing taxes on American consumers through tariffs. And because they have not yet been made public, their contents would contribute significantly to public understanding of the Administration's trade policy.

CoA Institute has both the intent and ability to make the results of this request available to a reasonably broad public audience through various media. Its staff has significant experience and expertise in government oversight, investigative reporting, and federal public interest litigation. These professionals will analyze the information responsive to this request, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, whether through the Institute's regularly published online newsletter, memoranda, reports, or press releases.[5] In addition, as CoA Institute is a non-profit organization as defined under Section 501(c)(3) of the Internal Revenue Code, it has no commercial interest in making this request.

## **Request To Be Classified as a Representative of the News Media**

For fee status purposes, CoA Institute also qualifies as a "representative of the news media" under FOIA.[6] As the D.C. Circuit recently held, the "representative of the news media" test is properly focused on the requestor, not the specific FOIA request at issue.[7] CoA Institute satisfies this test because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. Although it is not required by the statute, CoA Institute gathers the news it regularly publishes from a variety of sources, including FOIA requests, whistleblowers/insiders, and scholarly works. It does not merely make raw information available to the public, but rather distributes distinct work products, including articles, blog posts, investigative reports, newsletters, and congressional testimony and statements for the record.[8] These distinct works

---

[5] *See also Cause of Action*, 799 F.3d at 1125-26 (holding that public interest advocacy organizations may partner with others to disseminate their work).

[6] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[7] *See Cause of Action*, 799 F.3d at 1121.

[8] *See, e.g.*, CoA INSTITUTE, EVADING OVERSIGHT: THE ORIGINS AND IMPLICATIONS OF THE IRM CLAIM THAT ITS RULES DO NOT HAVE AN ECONOMIC IMPACT (Jan. 2018), http://coainst.org/2mgpYAu; CoA Institute, *Documents Reveal Special Interest Groups Lobbied HUD for Mortgage Settlement Funds* (Aug. 8, 2017), http://coainst.org/2yLaTyF; CoA Institute, *The GSA Has No Records on its New Policy for Congressional Oversight Requests* (July 26, 2017), http://coainst.org/2eHooVq; CoA INSTITUTE, SENSITIVE CASE REPORTS: A HIDDEN CAUSE OF THE IRS TARGETING SCANDAL (Mar. 2017), http://coainst.org/2y0fbOH; CoA Institute, *Sec. Vilsack followed ethics guidelines when negotiating his future employment*, (Feb. 3, 2017), http://coainst.org/2mJljJe; CoA INSTITUTE, INVESTIGATIVE REPORT: PRESIDENTIAL ACCESS TO TAXPAYER INFORMATION (Oct. 2016), http://coainst.org/2d7qTRY; James Valvo, *There is No Tenth Exemption* (Aug. 17, 2016), http://coainst.org/2doJhBt; CoA INSTITUTE, MEMORANDUM: LEGAL ANALYSIS OF FORMER SECRETARY OF STATE HILLARY CLINTON'S USE OF A PRIVATE SERVER TO STORE EMAIL RECORDS (Aug. 24, 2015), http://coainst.org/2eXhXe1; CoA Institute, *CIA too busy for transparency* (Aug. 11, 2016), http://coainst.org/2mtzhhP; *Hearing on Revisiting IRS Targeting: Progress of Agency Reforms and*

Department of Commerce
April 15, 2019
Page 3

are distributed to the public through various media, including the Institute's website, Twitter, and Facebook.  CoA Institute also provides news updates to subscribers via e-mail.

The statutory definition of a "representative of the news media" contemplates that organizations such as CoA Institute, which electronically disseminate information and publications via "alternative media[,] shall be considered to be news-media entities."[9]  In light of the foregoing, numerous federal agencies have appropriately recognized the Institute's news media status in connection with its FOIA requests.[10]

### Record Preservation Requirement

CoA Institute requests that the disclosure officer responsible for the processing of this request issue an immediate hold on all records responsive, or potentially responsive, to this request, so as to prevent their disposal until such time as a final determination has been issued on

---

*Congressional Options Before the Subcomm. on Oversight, Agency Action, Fed. Rights & Fed. Courts of the S. Comm. on the Judiciary*, 114th Cong. (Aug. 5, 2015) (statement of Erica L. Marshall, Counsel, CoA Inst.), http://coainst.org/2mJC8DH; *Hearing on Watchdogs Needed: Top Government Investigator Positions Left Unfilled for Years Before the S. Comm. on Homeland Sec. & Gov't Affairs*, 114th Cong. (June 3, 2015) (statement of Daniel Z. Epstein, Exec. Dir., CoA Inst.), http://coainst.org/2mrwHr1; *Hearing on Ongoing Oversight: Monitoring the Activities of the Justice Department's Civil, Tax and Environmental and Natural Resources Divisions and the U.S. Trustee Program Before the H. Comm. on the Judiciary*, 114th Cong. (May 19, 2015) (statement of Daniel Z. Epstein, Exec. Dir., CoA Inst.), http://coainst.org/2n7LxWG; CoA Institute, 2015 Grading the Government Report Card (Mar. 16, 2015), http://coainst.org/2as088a; *Hearing on Potential Reforms to the Freedom of Information Act (FOIA) Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. (Feb. 27, 2015) (statement of Daniel Z. Epstein, Exec. Dir., CoA Inst.), http://coainst.org/2lLsph8; CoA Institute, Grading the Government: How the White House Targets Document Requesters (Mar. 18, 2014), http://coainst.org/2aFWxUZ.

[9] 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[10] *See, e.g.*, FOIA Request F-133-18, U.S. Agency for Int'l Dev. (Apr. 11, 2018); FOIA Request 18-HQ-F-487, Nat'l Aeronautics & Space Admin. (Apr. 11, 2018); FOIA Request 1403076-000, Fed. Bureau of Investigation (Apr. 11, 2018); FOIA Request 201800050F, Exp.-Imp. Bank (Apr. 11, 2018); FOIA Request 2016-11-008, Dep't of the Treasury (Nov. 7, 2016); FOIA Requests OS-2017-00057 & OS-2017-00060, Dep't of Interior (Oct. 31, 2016); FOIA Request 2017-00497, Office of Personnel Mgmt. (Oct. 21, 2016); FOIA Request 092320167031, Ctrs. for Medicare & Medicaid Servs. (Oct. 17, 2016); FOIA Request 17-00054-F, Dep't of Educ. (Oct. 6, 2016); FOIA Request DOC-OS-2016-001753, Dept. of Commerce (Sept. 27, 2016); FOIA Request 2016-366-F, Consumer Fin. Prot. Bureau (Aug. 11, 2016); FOIA Request F-2016-09406, Dept. of State (Aug. 11, 2016); FOIA Request 2016-00896, Bureau of Land Mgmt. (Aug. 10, 2016); FOIA Request 796939, Dep't of Labor (Mar. 7, 2016); FOIA Request 2015-HQFO-00691, Dep't of Homeland Sec. (Sept. 22, 2015); FOIA Request HQ-2015-01689-F, Dep't of Energy (Aug. 7, 2015); FOIA Request 2015-OSEC-04996-F, Dep't of Agric. (Aug. 6, 2015); FOIA Request 15-05002, Sec. & Exch. Comm'n (July 23, 2015); FOIA Request 145-FOI-13785, Dep't of Justice (Jun. 16, 2015); FOIA Request 2015-26, Fed. Energy Regulatory Comm'n (Feb. 13, 2015).

Department of Commerce
April 15, 2019
Page 4

the request and any administrative remedies for appeal have been exhausted.  It is unlawful for an agency to destroy or dispose of any record subject to a FOIA request.[11]

### **Record Production and Contact Information**

In an effort to facilitate document review, please provide the responsive documents in electronic form in lieu of a paper production.  If a certain portion of responsive records can be produced more readily, CoA Institute requests that those records be produced first and the remaining records be produced on a rolling basis as circumstances permit.

If you have any questions about this request, please contact me by telephone at (202) 499-2422 or by e-mail at kevin.schmidt@causeofaction.org.  Thank you for your attention to this matter.

*Kevin Schmidt*
_____
KEVIN SCHMIDT
DIRECTOR OF INVESTIGATIONS

---

[11] *See* 36 C.F.R. § 1230.3(b) ("Unlawful or accidental destruction (also called unauthorized destruction) means . . . disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records."); *Chambers v. Dep't of the Interior*, 568 F.3d 998, 1004-05 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under the FOIA or the Privacy Act."); *Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41-44 (D.D.C. 1998).

# EXHIBIT

# 1



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MEMORANDUM FOR SECRETARY OF COMMERCE

SUBJECT:  Response to Steel and Aluminum Policy Recommendations

This memo provides a consolidated position from the DoD on the investigation of the effect of steel mill imports and the effects of imports of aluminum on national security, conducted by the Department of Commerce under Section 232 of the Trade Expansion Act of 1962 (hereinafter "Section 232 Report").

Regarding the December 15, 2017 reports on steel and aluminum, DoD believes that the systematic use of unfair trade practices to intentionally erode our innovation and manufacturing industrial base poses a risk to our national security.  As such, DoD concurs with the Department of Commerce's conclusion that imports of foreign steel and aluminum based on unfair trading practices impair the national security.  As noted in both Section 232 reports, however, the U.S. military requirements for steel and aluminum each only represent about three percent of U.S. production.  Therefore, DoD does not believe that the findings in the reports impact the ability of DoD programs to acquire the steel or aluminum necessary to meet national defense requirements.

DoD continues to be concerned about the negative impact on our key allies regarding the recommended options within the reports.  However, DoD recognizes that among these reports' alternatives, targeted tariffs are more preferable than a global quota or global tariff.  In addition, we recommend an inter-agency group further refine the targeted tariffs, so as to create incentives for trade partners to work with the U.S. on addressing the underlying issue of Chinese transshipment.

If the Administration moves forward with targeted tariffs or quotas on steel, DoD recommends that the management and labor leaders of the respective industries be convened by the President, so that they may understand that these tariffs and quotas are conditional.  Moreover, if the Administration takes action on steel, DoD recommends waiting before taking further steps on aluminum.  The prospect of trade action on aluminum may be sufficient to coerce improved behavior of bad actors.  In either case, it remains important for the President to continue to communicate the negative consequences of unfair trade practices.

This is an opportunity to set clear expectations domestically regarding competitiveness and rebuild economic strength at home while preserving a fair and reciprocal international economic system as outlined in the National Security Strategy.  It is critical that we reinforce to

our key allies that these actions are focused on correcting Chinese overproduction and countering their attempts to circumvent existing antidumping tariffs – not the bilateral U.S. relationship.

cc:
Secretary of the Treasury
Secretary of State
Chief of Staff to the President
Assistant to the President for National Security Affairs
Chairman, National Economic Council
United States Trade Representative

2