# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAUSE OF ACTION INSTITUTE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 19-2698 |
| U.S. DEPARTMENT OF COMMERCE, | ) |
| Defendant. | ) |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Cause of Action Institute ("CoA Institute") respectfully submits this notice of supplemental authority related to the pending cross-motions for summary judgment between CoA Institute and Defendant Department of Commerce. *See* ECF Nos. 17 – 18, 26, 28.

Among other things, the parties disagree as to whether the government may continue to withhold the Section 232 secretarial report on the national-security impacts of uranium imports under the presidential-communications and deliberative-process privileges. Defendant suggests that the report continues to be used for undefined presidential decision-making. CoA Institute, however, argues that the President's decision to forego action under Section 232 upon receipt of the secretarial report foreclosed any further action under the statute, thus vitiating any continued confidentiality interest in the report.

As reflected in the attached opinion, the United States Court of International Trade yesterday invalidated a presidential proclamation imposing duties on Turkish steel. The President issued the challenged proclamation without observance of mandated statutory procedures under Section 232. Specifically, the proclamation, which sought to modify an earlier proclamation imposing duties on steel imports, was not based upon a new secretarial report. The court explained

that the temporal limits imposed by Section 232—and the requirement for presidential action to be undertaken in timely fashion after disposition of a secretarial investigation—are "not a mere directory guideline, but a restriction that requires strict adherence." *See* Exhibit 1 at 8.

> To require adherence to the statutory scheme does not amount to a sanction, but simply ensures that the deadlines are given meaning and that the President is acting on up-to-date national security guidance. The Presidents is, of course, free to return to the Secretary and obtain an updated report pursuant to the statute.

*Id.*

More to the point—and particularly relevant to the instant case—the court held that "there is nothing in [Section 232] to support the continuing authority to [undertake presidential action] outside of the stated timelines." *Id.* at 9. To the extent the President has already acted in timely fashion in response to a secretarial report, he cannot decide to take further or different action "without following the procedures in the statute," that is, by awaiting the disposition of another secretarial investigation. *Id.* at 10.

Here, Defendant completed its investigation into uranium and transmitted a final report to the President in April 2019. *See* Pl.'s Statement of Undisputed Material Facts ¶ 20 [hereinafter Pl.'s SUMF], ECF No. 18-2. About three months later, the President published a memorandum announcing that he did "not concur with the Secretary's finding that uranium imports threaten to impair the national security[.]'" *Id.* ¶ 23. Moreover, the President confirmed that he was not "tak[ing] any action under [S]ection 232[.]" *Id.* ¶ 25. Notwithstanding the existence of the Nuclear Fuel Working Group, the President is now statutorily foreclosed from using the secretarial report at issue for any other purpose under Section 232. While the President is free to use the report for other things that he may consider useful, he cannot bypass Congress's disclosure directives by claiming executive privilege based on vague notions of "protecting" the "national security."

The Court of International Trade's decision also bolsters CoA Institute's arguments concerning the meaning of "disposition" and the timing of Section 232's publication requirement. The court explained, albeit in dicta, that it is possible to seek judicial review of the Secretary of Commerce's factual determination that continued importation of an article threatens national security. *See* Ex. 1 at 12 – 14.  In that situation, a secretarial report would be an important part of the administrative record, regardless of whether the President has taken any action contemplated by Section 232.  Yet to suggest that the secretarial report could be withheld as privileged would seriously impede review.

Moreover, the court suggested that the "required precondition that the Secretary make a finding and issue a report"—and, presumably, publish it in the *Federal Register*—is an important safeguard. *Id.* at 13 n.9.  "Allowing the President to skirt this precondition would potentially pose delegation concerns." *Id.*  As Senate *amici* have argued in another pending Section 232 FOIA case, there is a strong public interest in disclosure of a secretarial report because publication impacts both Congress's ability to conduct oversight and legislate, as well an injured member of the public's ability to challenge tariff action or the findings of a secretarial investigation. *See* Br. of *Amici* at 11–13, *Cause of Action Inst. v. Dep't of Commerce*, No. 19-0778 (D.D.C. filed Mar. 6, 2020).  For Congress "to effectively debate, design, and possibly enact [any] legislative reforms . . . [it] must have access to the executive's statutorily-required fact-finding.  Absent such information, [it] cannot know how the executive is making use of its delegated authority and thus how best to approach efforts to reforming that delegation." *Id.* at 12.  Defendant's mistaken understanding of its ability to keep a secretarial report secret indefinitely, and at the whim of the President, flies in the face of the design and purpose of Section 232.

3

Dated: July 15, 2020

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
(D.C. Bar No. 1024362)
R. James Valvo, III
(D.C. Bar No. 1017390)

CAUSE OF ACTION INSTITUTE
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
Telephone: (571) 482-4182
ryan.mulvey@causeofaction.org
james.valvo@causeofaction.org

*Counsel for Plaintiff CoA Institute*