UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE,<br><br>      Defendant. | Civ. A. No. 19-2698 (DLF) |

**DEFENDANT'S REVISED STATEMENT
OF UNDISPUTED MATERIAL FACTS**

    The United States Department of Commerce ("the Department") hereby respectfully submits this revised statement of material facts as to which there is no genuine issue. Pursuant to the Court's Minute Order of February 15, 2022, this filing omits ¶¶ 22-24 of the February 12, 2022, version, which are the three paragraphs to which Plaintiff had objected. *See* Pl.'s Resp. and Objection to Def.'s Notice of Errata ¶¶ 9-10 (ECF No. 52).

    1.    By correspondence dated February 18, 2019, Plaintiff submitted identical FOIA requests to the Bureau of Industry and Security ("BIS"), which is part of the Department, and to the Department seeking "a copy of the Commerce Secretary's final report to the President regarding Section 232 National Security Investigation of Imports of Automobiles, Including Cars, SUVs, Vans and Light Trucks, and Automotive Parts." Second Declaration of Grace Agyekum ("2d Agyekum Decl.") ¶ 7 & Ex. 1 and 2.

    2.    The document to which Plaintiff referred is a report that the Secretary of Commerce ("Secretary") submitted to President Donald J. Trump on February 19, 2019 pursuant

to Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. §1862 ("Section 232") regarding whether automobile and certain automobile part imports threaten to impair the national security of the United States. Three months later, on May 17, 2019, the President issued an Executive Proclamation entitled Adjusting Imports of Automobiles and Automobile Parts Into the United States, concurring with the Secretary that these imports constituted a threatened impairment of American national security and requiring the United States Trade Representative (USTR) to "pursue negotiations of agreements contemplated in 19 U.S.C. § 1862(c)(3)(A)(i) to address the threatened impairment of the national security with respect to imported automobiles and certain automobile parts from the European Union, Japan and any other country the [USTR] deems appropriate, and to update me on the progress of such negotiations within 180 days." *Id*. at ¶ 7 n. 1 & Ex. 3.

   3. By email dated February 25, 2019, BIS advised Plaintiff that Plaintiff's request for a waiver of the applicable fees was granted. *Id*. at ¶ 9 & Ex. 5.

   4. On March 20, 2019, Plaintiff filed a lawsuit against DOC regarding the withholding of the Automotive Report. *Cause of Action Inst. v. Dep't of Commerce*, Docket No. 19-0778-CJN (D.D.C.), for which the court has taken the parties' cross-motions for summary judgment under advisement. *Id.* at ¶ 10 n. 3.

   5. By correspondence dated June 13, 2019, the Department advised Plaintiff, on behalf of BIS and itself, that:

> We are currently reviewing, in conjunction with the Executive Office of the President, whether the Secretary's report constitutes a presidential record within the meaning of the Presidential Records Act, 44 U.S.C. 2201 et seq., in which case it would not be subject to disclosure under FOIA. However, to the extent that the Secretary's Section 232 report to the President of the United States may constitute an agency record within the meaning of FOIA, DOC and BIS are withholding it in full pursuant to 5 U.S.C. § 552(b)(5), which exempts from disclosure inter-agency or intra-agency memorandums or letters which would not

>be available by law to a party other than an agency in litigation with the agency. The report, if an agency record, would be exempted from disclosure under FOIA pursuant to the presidential communications privilege and/or the deliberative process privilege, until all actions deemed necessary to adjust the imports of automobiles and automobile parts so that such imports will not threaten to impair the national security have been completed. See 15 C.F.R. § 705.11.

*Id*. at ¶ 11 & Ex. 6.

6.   Upon completion of this review, the Department concluded that the Automotive Report was subject to the presidential communication privilege and deliberative process privilege pursuant to Exemption 5. *Id.* at ¶ 12.

7.   In connection with *Cause of Action Inst. v. Dep't of Commerce*, Docket No. 19-0778-CJN (D.D.C.), Plaintiff submitted a declaration averring that DOC took 270 days to release its 1999 report on "*The Effects of Imports of Crude Oil on National Security*" and "over 600 days" to publish its 1984 report on "The Impact of Ferroalloy Imports on the National Security." *See* Declaration of R. James Valvo, III, ¶ 8 (ECF No. 23-3) (attached as Exhibit C to Defendant's Motion for Summary Judgment). An attached chart entitled "Section 232 Investigations Where Reports Issued" reveals five reports being delayed between 106 and 659 days, including the two mentioned above. *Id*.

8.   By correspondence dated April 15, 2019, Plaintiff submitted identical FOIA requests to BIS and the Department seeking "1. a copy of the Commerce Secretary's final report to the President regarding the Section 232 Investigation on the Effect of Imports of Uranium on the National Security (Uranium Report)" and "2. The DOD response letter to the Section 232 Investigation on the Effect of Imports of Uranium on the National Security." Declaration of Brian D. Lieberman ("Lieberman Decl."), at ¶ 10 & Ex. 1 and 2; 2d Agyekum Decl., at ¶ 14 & Ex. 7 and 8.

9.  The document to which Plaintiff referred in its April 15, 2019 correspondence is a report that the Secretary submitted to President Trump on February 19, 2019 pursuant to Section 232 regarding whether uranium imports threaten to impair the national security. Lieberman Decl., at ¶¶ 6 and 25. Subsequently, on July 12, 2019, the President issued a Presidential Memorandum entitled Memorandum on the Effect of Uranium Imports on the National Security and Establishment of the United States Nuclear Fuel Working Group (Presidential Memorandum), in which he did not concur that these imports constituted a threatened impairment of American national security, but agreed with the Secretary's finding that uranium imports affect national security and deciding further investigation was merited. The President stated:

> Although I agree with the Secretary's findings raise significant concerns regarding the impact of uranium imports on the national security with respect to domestic uranium mining, I find that a fuller analysis of national security considerations with respect to the entire nuclear fuel supply chain is necessary.

*Id.* at ¶¶ 26 and 28 & Ex. 6 at Section 1(c).

10. In the Presidential Memorandum, the President further stated, "[t]he United States requires domestically produced uranium to satisfy Department of Defense (DOD) requirements for maintaining effective military capabilities----including nuclear fuel for the United States Navy's fleet of nuclear-powered aircraft carriers and nuclear-powered submarines, source material for nuclear weapons and other functions." In addition, he noted, "[d]omestic mining, milling, and conversion of uranium, however, while significant, are only a part of the nuclear supply chain necessary for national security, including DOD needs." *Id.* at ¶ 29 & Ex. 6 at Section 2(a).

4

11. In the Presidential Memorandum, the President established the U.S. Nuclear Fuel Working Group (Working Group) "[t]o address the concerns identified by the Secretary regarding domestic uranium production and to ensure a comprehensive review of the entire domestic nuclear supply chain." The President appointed senior government officials, including the Secretaries of Commerce, Defense, Energy, Interior and State, to the Working Group. The President directed the Working Group to "examine the current state of domestic nuclear fuel production to reinvigorate the entire nuclear fuel supply chain, consistent with United States national security and nonproliferation goals." The President further directed the Working Group to "submit a report to the President setting forth the Working Group's findings and making recommendations to further enable domestic nuclear fuel production if needed." *Id*. at ¶ 31 & Ex. 6 at Section 2(c).

12. The Department has determined that the Uranium Report is exempt from disclosure pursuant to the presidential communications privilege and the deliberative process privilege pursuant to Exemption 5. *Id*. at ¶¶ 9 and 34-47.

13. In February 1959, "the Director of the Office of Civil and Defense Mobilization, who exercised the Secretary's authority under section 232's statutory predecessor" advised President Eisenhower "that imports of crude oil and its derivatives threatened to impair the national security." *See Publication of a Report to the President on the Effect of Automobile and Automobile-Part Imports on National Security*, 44 Op. O.L.C. ---, --- (2020) (attached as Exhibit D to Defendant's Motion for Summary Judgment) (slip op. at 16). The Report of Investigation of Imports of Crude Oil and its Derivatives and Products was not released until more than four months after President Eisenhower imposed import restrictions. *Id*. The report Effects of Imported Articles on National Security, 40 Fed. Reg. 4457, 4457 (January 30, 1975), was not

published until after President Ford's imposition of supplemental fees. Id. The same has been true of cases of presidential inaction. Section 232 reports were released after "no action" decisions in 1988, 1989, 1995 and 2000. *Id*. (slip op. at 17 & n. 11).

14. Plaintiff Cause of Action has requested, pursuant to FOIA, a total of two Section 232 Reports: the Auto Report and the Uranium Report. *See* 2d Agyekum Decl. ¶¶ 3, 11, 18.

15. Plaintiff Cause of Action did not request, pursuant to FOIA, the Section 232 Titanium Sponge report. *Id*. ¶¶ 18-19.

16. Plaintiff Cause of Action did not request, pursuant to FOIA, the Section 232 Electrical Steel report. *Id*.

17. Plaintiff Cause of Action did not request, pursuant to FOIA, the Section 232 Vanadium report. *Id.*

18. The Department pro-actively published the Section 232 Titanium Sponge Report on its website. *See* Borman Decl. Ex. 1.

19. The Department pro-actively published the Section 232 Electrical Steel Report on its website within a year of the Secretary transmitting the report to the President. *Id.*

20. The Department pro-actively published the Section 232 Vanadium Report on its website within a year of the Secretary transmitting the report to the President. *Id.*

21. Of the nine Section 232 Reports completed in the last 25 years, all have been published on BIS' website. Six of those nine, including the most recent two, were published within a year of the Secretary transmitting the report to the President. *See* Borman Decl. ¶¶ 5, 14; *id*. Ex. 2.

Dated: February 15, 2022							Respectfully submitted,

											MATTHEW M. GRAVES, D.C. Bar # 481052
											United States Attorney for the District of Columbia

											BRIAN P. HUDAK
											Acting Chief, Civil Division

										By: */s/ John Moustakas*
											John Moustakas, D.C. Bar # 442076
											Assistant United States Attorney
											555 Fourth Street, N.W.
											Washington, D.C. 20530
											(202) 252-2518
											john.moustakas@usdoj.gov

											*Counsel for Defendant*